UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ARDIS A. MAUNE,<br><br>　　　　　　Maune,<br><br>　v.<br><br>BANKERS LIFE AND CASUALTY COMPANY,<br><br>　　　　　　Defendant. | Case No. 4:10-cv-00074-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it a Motion for Summary Judgment (Dkt. 247), submitted by Defendant Bankers Life and Casualty Co. Plaintiff Ardis Maune worked as an insurance sales agent for Defendant Bankers Life from April 16, 2007 until December 15, 2008. She was terminated from her employment with Bankers Life in December 2008.

On February 10, 2010, Maune filed her initial complaint, alleging discrimination and related conduct during that time period on the part of Bankers Life and about 45 other defendants. The action has since been reduced to an action for employment

Memorandum Decision and Order - 1

discrimination and retaliation, with Bankers Life as the sole defendant.  Bankers Life now seeks summary judgment on the remaining claims.  For the reasons stated below the Court will grant the motion.

## BACKGROUND

Although the parties disagree about how the law should be applied to the facts of this case, there is little dispute over the facts themselves.  Maune is a woman over age 40, born with a cleft pallet and cleft lip. She began working at Bankers Life in October 2001 in Vancouver, Washington. Maune was fired in 2005, after which she filed charges of discrimination against Bankers Life.  This suit was settled, and Maune resumed working, on April 16, 2007, as a Bankers Life sales agent in Pocatello, Idaho.  Bankers Life has submitted the contract Maune signed when she resumed employment, which includes a clause explicitly designating her as an independent contractor. *Agent Contract* at ¶ 4, Dkt. 247-4).

In early 2008, Maune sought the position of Pocatello branch sales manager. Bankers Life advertised for applications to permanently fill the branch sales manager position.  According to Maune, the advertisement required a telephone interview with a Mr. Harmon and Mr. Carey, and Mr. Harmon was supposed to provide a video presentation for the branch sales manager position.  But when Maune applied, Mr. Harmon did not give a video presentation, and Maune's interview with Mr. Harmon and Mr. Carey only lasted fifteen minutes.  During this interview, which occurred in January or February 2008, Mr. Harmon foreclosed the possibility that Maune would get the job,

stating that he could not believe that "he is wasting his time on this" and that Maune was "not going to get the job."

On March 31, 2008, Bankers Life sent Maune an email informing her that she would be given the additional responsibility of Field Trainer effective April 1, 2008. Later that month, on April 24, Bankers Life formally offered Todd Stevenson the Pocatello branch sales manager position. Todd Stevenson accepted the position, and he began his employment on June 1, 2008. At the time Stevenson accepted the position, he was under the age of 40.

On December 15, 2008, Bankers' Life terminated Ms. Maune's appointment as a Bankers Life sales agent. After her termination, Maune dual-filed a Discriminatory Charge with the Equal Employment Opportunity Commission (EEOC) and the Idaho Human Rights Commission (IHRC) on June 4, 2009. She then filed this suit in February 2010, alleging that Bankers Life discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964 (Title VII), the Age Discrimination in Employment Act of 1967, (ADEA), the Americans with Disabilities Act (ADA), and the Idaho Human Rights Act (IHRA).

Maune alleges that while working as a Bankers Life sales agent, she was the victim of discrimination on the basis of her sex, her age, and her disability. Specifically, Maune alleges that Bankers Life discriminatorily failed to promote her to the position of Pocatello branch sales manager. She also alleges a great variety of other discriminatory

acts on the part of Todd Stevenson, after he was hired to fill the branch sales manager position in June 2008.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any

affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

Statements in a brief, unsupported by the record, cannot be used to create a factual dispute. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Circuit "has repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir.1988). Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit must contain testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document. *Id.*

## ANALYSIS

Bankers Life contends that it is entitled to summary judgment on the First Amended Complaint because: (1) Maune was an independent contractor, not an employee, and therefore her discrimination and retaliation claims fail; (2) Maune filed

her Charge of Discrimination with both the EEOC and the IHRC more than one year after Bankers Life refused to hire her for the Pocatello branch sales manager position, and therefore her failure-to-promote claims are time barred; and (3) Maune is not entitled to an award of attorneys' fees because she is not a prevailing party under her federal claims and no attorneys' fees are allowed for her state law claims. After construing all of the evidence in a light most favorable to Maune, the Court concludes that Bankers Life is entitled to summary judgment.

1.   **Employee or Independent Contractor**

To prevail on her employment discrimination and retaliation claims against Bankers Life under Title VII, the ADEA, the ADA, and the IHRA, Maune must prove she was an "employee" of Bankers Life, rather than an independent contractor.

The Supreme Court developed the process for determining whether a plaintiff is an employee or independent contractor in *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 323 (U.S. 1992). *Darden* analysis measures the "hiring party's right to control the manner and means by which the product is accomplished," by means of twelve factors: (1) the skill required; (2) the source of the instrumentalities and tools; (3) the location of the work; (4) the duration of the relationship between the parties; (5) whether the hiring party has the right to assign additional projects to the hired party; (6) the extent of the hired party's discretion over when and how long to work; (7) the method of payment; (8) the hired party's role in hiring and paying assistants; (9) whether the work is part of the regular business of the hiring party; (10) whether the hiring party is in

business; (11) the provision of employee benefits; and (12) the tax treatment of the hired party. *Murray v. Principal Financial Group, Inc.*, 613 F.3d 943, 945-46 (9th Cir. 2010).

In *Murray*, the Ninth Circuit reiterated that this test applied to federal employment discrimination statutes, such as Title VII, the ADEA, and the ADA. *Id.* at 945. It then applied the *Darden* factors in deciding that the plaintiff, Murray, an insurance agent like Maune, was an independent contractor and not an employee.

The court found several factors "strongly" favored classifying Murray as an independent contractor: she was free to operate her business as she saw fit, without day-to-day intrusions; she decided when to work; she maintained her own office; she scheduled her own time off; and she was not entitled to vacation or sick days. Also, she was paid in commission only, reported herself as self-employed to the IRS, and, in limited circumstances, sold products other than those offered by the defendant insurance company.

Other factors, the court noted, supported that Murray was an employee. She received some benefits, had worked at the company for a long time, was an at-will employee, and was subject to some minimum standards imposed by the company. However, the court found that, on balance, these factors were insufficient to overcome the "strong indication" that Murray was an independent contractor. In reaching this conclusion it dismissed as "minutiae" some disputed aspects of Murray's relationship with the defendant, "relating to who bears responsibility for providing some of the instrumentalities and tools required for Murray to perform her job, the degree of

Memorandum Decision and Order - 7

autonomy that Murray has to select and retain her assistant, and the degree to which Principal requires Murray to document and report her work." *Id.* at 946.

In this case, the parties have gone to extensive detail in weighing the *Darden* factors with respect to Maune's business relationship with Bankers Life. On balance, however, it appears that the factors clearly favor a finding that she was an independent contractor.

As in *Murray*, Maune reported to the IRS that she was self-employed, she received commissions only, and she received no health benefits or time-off days. In addition, Maune's efforts to sell insurance were mostly self-directed, she was responsible for obtaining and maintaining, at her own expense, any required licenses and permits, and Maune operated her business out of her home and in the homes of her clients most of the time. Also, insurance agents are long-term professionals with licenses and a skill set that allow for flexibility between hiring parties; these are the skills of independent contractors. Likewise, the two-year duration of the parties' relationship, even if an insignificant factor, points to an independent contractor relationship. And all of these factors pointing to an independent contract relationship are consistent with Maune's sales agent contract, in which she affirmed her independent contractor status.

On the other hand, Bankers Life provided Maune with secretarial support, furniture, and office supplies, as well as sales materials, like forms and brochures. Bankers Life discouraged her from hiring personnel or support staff, and permitted her to do so only where "such staff met very specific and arduous requirements." *Id.*, at 12.

Memorandum Decision and Order - 8

Bankers Life also required Maune to attend various meetings, including weekly meetings involving new agents and a mandatory monthly sales meetings.  But the Ninth Circuit in *Murray* declared similar factors as mere minutiae.  Thus, while these factors may favor a finding of an employee relationship, they carry minor weight relative to factors more central to the purpose of the *Darden* analysis.

At first blush, there is one fact might be viewed as distinguishing this case from *Murray*.  In *Murray* the insurance agent maintained her own office, where she paid rent.  Here, Bankers Life provided Maune with an office.   However, upon closer examination it is clear that this distinction is not significant.   While Maune indicated she did much of her work in the Bankers Life office, it is also undisputed that she conducted almost all of her sales activities away from the branch office – at her home office, her clients' home, or some other location.   Moreover, Maune took a tax deduction for her home office and expensed her auto mileage for her sales calls.  While Maune's office arrangement distinguishes this case from *Murray*, it is largely a distinction without a difference.  It is certainly not enough to compel a different conclusion than that reached by the 9th Circuit in *Murray*.

Perhaps most convincing, however, is the court's language in *Murray* categorizing all insurance agents as independent contractors: "We, along with virtually every other Circuit to consider similar issues, have held that insurance agents are independent contractors and not employees for purposes of various federal employment statutes, including the Employee Retirement Income Security Act ('ERISA'), the Age

Discrimination in Employment Act ('ADEA'), and Title VII." 613 F.3d, at 944-45. The Court also finds persuasive the decision in *Ribinson v. Bankers Life and Casualty Co.*, 899 F. Supp. 848, 849 (D.N.H. 1995) finding another Bankers Life insurance agent to be an independent contractor.

Consideration of all the facts in the record and the Ninth Circuit's position in factually similar cases leads to one conclusion: Maune was not an employee of Bankers Life. This is the only reasonable conclusion given that the employee-independent contractor determination is "all or nothing" and there is no partial protection under federal employment discrimination laws. *Barnhart v. New York Life Ins. Co.*, 141 F.3d 1310, 1313 (9th Cir. 1998).

**2.    Timing**

The Court's conclusion that Maune is an independent contractor, and not an employee, does not automatically bar her failure-to-promote claims.  Specifically, Maune alleges that Bankers Life failed to give her the Branch Sales Manager position on account of her gender, disability, and age.  Given her status as an independent contractor, the failure-to-promote claim is better understood as a failure-to-hire claim.  Bankers Life argues that this claim is time barred.

A plaintiff must exhaust administrative remedies before bringing suit, which involves timely filing a Charge of Discrimination with the EEOC or the IHRC. The EEOC has a 180 or 300-day statute of limitations from the date of the alleged discriminatory conduct. Because Maune dual-filed at the EEOC and IHRA, the 300-day

statute of limitations applies. The IHRA has a statute of limitations of one year. Bankers Life claims that Maune filed her Charge of Discrimination after both statutes of limitations expired. Maune argues that her claims were not time barred because they were continuing.

### A. *Original Claim*

Maune was denied a promotion to the position of Pocatello Branch Sales Manager in 2008. In her First Amended Complaint, Maune claims that this refusal occurred "in or about June or July of 2008." *Am. Compl.*, ¶ 16 (Dkt. 230). But Maune testified that she knew in January or February of 2008 that she was not going to get the branch sales manager position. *Maune Depo.*, at p. 100 l. 8- 101 l. 3 (Dkt. 247-5). Thus, the act of alleged discrimination underlying Maune's failure-to-promote claim occurred by February 2008. Since Maune filed her Charge of Discrimination with the EEOC and IHRA on June 4, 2009, the Charge of Discrimination was not timely filed with respect to that promotion. Therefore, the original failure-to-promote claim is time-barred.

### B. *New Claims*

Maune raises new claims in her Memorandum in Opposition that she repeatedly requested promotions to unit sales manager and unit supervisor positions throughout Stevenson's tenure. *Pl.'s Resp.*, at 16-17 (Dkt. 249).

A Title VII plaintiff may bring only those claims that were included in her EEOC charge, or that are "like or reasonably related to the allegations contained in the EEOC charge." *Sosa v. Hiraoka*, 920 F.2d 1415, 1456 (9th Cir. 1990). This rule promotes the

Memorandum Decision and Order - 11

important purposes of permitting prompt investigation, possible conciliation, and voluntary resolution of discrimination complaints. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 180–81 (1989). It also "serves the important purposes of giving the charged party notice of the claim and 'narrow[ing] the issues for prompt adjudication and decision.'" *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1099 (9th Cir. 2002)(citations omitted). Failure to meet this requirement deprives the court of subject matter jurisdiction. *Id.*

Subject matter jurisdiction extends over all allegations of discrimination that either "fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination." *EEOC v. Farmer Bros. Co.,* 31 F.3d 891, 899 (9th Cir.1994). (emphasis in the original)(internal quotations omitted). In making this determination, "it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *B.K.B.*, 276 F.3d at 1100.

Here, the parties do not dispute that Maune did not expressly claim in her EEOC charge that Bankers Life failed to promote her to the unit sales manager or unit supervisor position. Instead, her only reference to a Bankers Life employment opportunity in the Charge of Discrimination is the branch sales manager position:

> Worked as Branch Sales Manager for five months from January 2008 through May 2008 and was paid 2¢ an hour. Applied for position of Branch Sales Manager, denied by Richard Harmon.

Memorandum Decision and Order - 12

(Exhibit 1A pp 5-8.) Bankers Life never received notice of Maune's claims that it unlawfully denied her the unit sales manager and unit supervisor positions because Maune did not include them in her EEOC charge. The question therefore is whether an investigation into the alleged failure to promote her to the unit branch manager or unit supervisor would have necessarily grown out of Maune's original charge that she was not promoted to the branch manager position.

With Maune's claims that she was denied promotions to unit sales manager and unit supervisor, she is offering entirely new acts of discrimination never investigated by the EEOC. While the allegations with regard to these latter two claims are the same as those Maune made in her EEOC charge – she was allegedly denied a promotion because of her gender, disability, and age – she has provided no evidence and offered no argument explaining why the EEOC could reasonably have been expected to investigate these two later claims based on her EEOC charge. The claim that she was denied the unit manager and unit supervisor positions is discrete and distinct from the claim included in her EEOC charge – that she was denied the branch manager position. *C.f. National Railway Passenger Corp. v. Morgan,* 536 U.S. 101, 122 (2002) (failure-to-promote claims arise out of discrete discriminatory acts). For this reason, the Court concludes that Maune's original EEOC charge would also have failed to trigger an investigation into Maune's allegations that she was denied these completely different positions.

Memorandum Decision and Order - 13

Admittedly, this is a close case.  But even assuming that Maune's claims with respect to the unit manager and unit supervisor positions were sufficiently related to her EEOC charge, these never-alleged failure-to-promote claims would not survive.

First, Maune's new claim relating to the unit sales manager position is time barred because she was denied this position more than one year before she filed her charge of discrimination.  Maune admitted in her deposition that she was denied the unit sales manager position before April 2008.  *Maune Dep.* 100:24-101:9, Dkt. 247-5.  As explained above, Maune did not file her charge of discrimination until June 2009 – more than a year after she was denied the unit sales manager position.  This new claim therefore fails.

Second, Maune's new claim that she was denied the unit supervisor position fails because no such position ever existed and therefore Bankers Life never hired a unit supervisor.  To prevail on a failure-to-promote or hire claim, a plaintiff must show that she applied and was qualified for a job for which the employer was seeking applicants.  *See, e.g., Warren v. City of Carlsbad,* 58 F.3d 439, 441-42 (9th Cir.1995) (noting that second prong of prima facie case requires employee to show "she applied and was qualified for a job for which the employer was seeking applicants").  Without such proof, Maune cannot establish a prima facie case.  So even if she had exhausted her administrative remedies, this new claim would not survive.

Memorandum Decision and Order - 14

3.     **Attorney's Fees**

Maune seeks attorney's fees under Title VII, the ADEA, the ADA, and the IHRA. In light of the above analysis, Maune is not a prevailing party. As such, she is not entitled to an award of attorney's fees under Title VII, the ADEA, or the ADA. *See* 42 U.S.C. 2000e-5(k); 29 U.S.C. 626(b); 29 U.S.C. 216(b); 42 U.S.C. 12117. Further, Maune is not entitled to attorney's fees under Idaho employment discrimination laws. *See Stout v. Key Training Corp.*, 158 P.3d 971, 974 (Idaho 2007). The Court will award summary judgment on this issue as well.

## ORDER

IT IS ORDERED THAT:

1.     Defendant's Motion for Summary Judgment (Dkt. 247) is **GRANTED**.

DATED: October 5, 2012

B. Lynn Winmill  
Chief Judge  
United States District Court